# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA – FRESNO DIVISION

| | |
|---|---|
| BERT GULLATT, | CASE NO. 1:10-cv-01109-AWI-SKO |
| Plaintiff, | **FINDINGS AND RECOMMENDATIONS THAT PLAINTIFF'S COMPLAINT BE DISMISSED WITHOUT LEAVE TO AMEND** |
| v. | |
| AURORA LOAN SERVICES, LLC, and DOES 1 through 10, inclusive, | |
| Defendants. | **OBJECTIONS DUE: 30 DAYS** |

## I. INTRODUCTION

Bert Gullatt ("Plaintiff") is proceeding *pro se* and *in forma pauperis* in this action filed under the Helping Families Save Their Homes Act of 2009, Pub. L. No. 111-22, § 702, 123 Stat. 1632 (2009) ("Section 702").

## II. FACTUAL BACKGROUND

On June 18, 2010, Plaintiff filed his complaint asserting that Aurora Loan Services, LLC ("Defendant") is attempting to evict him from his rental home in violation of Section 702 by failing to provide him with the required 90-day notice. Plaintiff asserts that Defendant was the lender and successful bidder at a foreclosure sale of the home Plaintiff rents. Plaintiff contends that Defendant served him with a 90-day notice to vacate the residence. Despite the 90-day notice, Defendant immediately began an unlawful detainer action against him in Stanislaus County Superior Court,

Case No. 653855, for the purpose of evicting Plaintiff from the property without complying with Section 702. Plaintiff seeks injunctive relief against Defendant to prevent Defendant from pursuing the unlawful detainer action. Plaintiff also seeks $20,000 in damages and costs of suit.

### III. DISCUSSION

**A.     Screening Standard**

In cases where the plaintiff is proceeding *in forma pauperis*, the Court is required to screen each case, and shall dismiss the case at any time if the Court determines that the allegation of poverty is untrue, or the action or appeal is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2). If the Court determines that the complaint fails to state a claim, leave to amend may be granted to the extent that the deficiencies of the complaint can be cured by amendment. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc).

Further, the Court has an independent duty to examine its own subject matter jurisdiction, whether or not the issue is raised by the parties. *United Investors Life Ins. Co. v. Waddell & Reed, Inc.*, 360 F.3d 960, 966 (9th Cir. 2004); *see also Toumajian v. Frailey*, 135 F.3d 648, 652 (9th Cir. 1998) ("In this action, as in all actions before a federal court, the necessary and constitutional predicate for any decision is a determination that the court has jurisdiction – that is the power – to adjudicate the dispute."). The court shall dismiss an action "[i]f the court determines at any time that it lacks subject-matter jurisdiction." Fed. R. Civ. P. 12(h)(3).

**B.     Plaintiff's Claim for Damages Under Section 702 Should Be Dismissed.**

In *Logan v. United States Bank National Ass'n,* the court examined whether a private right of action exists under Section 702. No. CV 09-08950 MMM (PLAx), 2010 WL 1444878 (C.D. Cal. Apr. 12, 2010). The court concluded that Congress neither expressly nor impliedly created a private right of action to bring suit under Section 702 and dismissed the case for lack of subject matter jurisdiction. *Id*. at *7-10. This Court finds *Logan* to be persuasive and convincing authority, and for the reasons stated below, recommends that the action be dismissed due to this Court's lack of subject matter jurisdiction over Plaintiff's suit.

1. **Legal Standard – Statutory Creation of a Private Rights of Action**

Section 1331 of Title 28 grants federal courts original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." As the Supreme Court observed in *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804, 808, 106 S. Ct. 3229, 3232 (1986), "the vast majority of cases brought under the general federal-question jurisdiction of the federal courts are those in which a federal law creates the cause of action." *Id*. (citing *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 8-9, 103 S. Ct. 2841, 2846 (1983)).

A private right of action is the right of an individual to bring suit to prevent or remedy an injury that results from another party's actual or threatened violation of a legal requirement. *Wisniewski v. Rodale, Inc.*, 510 F.3d 294, 296 (3d Cir. 2007). The existence of a statutory right of action is a question of statutory construction. *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568, 99 S. Ct. 2479, 2485 (1979) (citing *Cannon v. Univ. of Chi.*, 441 U.S. 677, 688, 99 S. Ct. 1946, 1953 (1979)). "[T]he fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person." *Id*. (internal quotation marks and citation omitted).

Determining whether Congress intended to create a private right of action requires an examination of the statute. Interpretation of a statute begins with the language of the statute itself. *Id*. at 568, 99 S. Ct. at 2485. The statute must either explicitly or impliedly create a right of action. *In re Digimarc Corp. Derivative Litig.*, 549 F.3d 1223, 1230 (9th Cir. 2008) (citing *Touche Ross & Co.*, 442 U.S. at 575, 99 S. Ct. at 2489). An express or explicit private right of action exists when the statute contains language that defines the cause of action. *Id.*

Where a federal statute does not expressly create a private right of action, a suit may be maintained under that statute only if "Congress intended to provide the plaintiff with a[n implied] private right of action." *First Pac. Bancorp, Inc. v. Helfer*, 224 F.3d 1117, 1121 (9th Cir. 2000). The Supreme Court has established a four-factor test to determine the existence of an implied private right of action where a statute does not expressly provide one. *Cort v. Ash*, 422 U.S. 66, 78, 95 S. Ct. 2080, 2088 (1975). The relevant factors include: (1) whether the plaintiff is a member of a class that the statute was enacted to benefit, (2) whether there is an indication of Congress' intent to create

or deny a private remedy, (3) whether the cause of action is consistent with the underlying purposes of the statute, and (4) whether the cause of action is traditionally relegated to state law. *Id.*

Following *Cort*, the Supreme Court determined that the second factor carries the greatest weight because "[t]he central inquiry remains whether Congress intended to create, either expressly or by implication, a private cause of action." *Touche Ross & Co.*, 442 U.S. at 575, 99 S. Ct. at 2489; *see also Thompson v. Thompson*, 484 U.S. 174, 189, 108 S. Ct. 513, 521 (1988) (Scalia, J., concurring) ("we effectively overruled the *Cort v. Ash* analysis in [*Touche*], . . . converting one of its four factors (congressional intent) into the *determinative factor*"). Thus, the Ninth Circuit has held that analysis of the remaining *Cort* factors is unnecessary if the court concludes that Congress did not intend to create a private right of action under the second factor in *Cort*. *Stupy v. U.S. Postal Serv.*, 951 F.3d 1079, 1081 (9th Cir. 1991); *see also Opera Plaza Residential Parcel Homeowners Ass'n v. Hoang* (*Opera Plaza*), 376 F.2d 831, 835 (9th Cir. 2004) (second *Cort* factor is "the key inquiry in this calculus").

In *Alexander v. Sandoval*, the Supreme Court set forth the analytical framework to determine whether Congressional intent to create a private right of action exists under a particular statute. 532 U.S. 275, 121 S. Ct. 1511 (2001). *Sandoval* instructs that the starting point for determining congressional intent is an examination of the text and structure of the statute. 532 U.S. at 288, 121 S. Ct. at 1520. This examination requires consideration of "the entire statutory scheme provided by Congress in determining if a private cause of action exists, noting that analogous provisions expressly providing for private causes of action can imply congressional intent not to create an implied cause of action." *Opera Plaza,* 376 F.3d at 836 (citing *Touche Ross & Co.*, 442 U.S. at 571-74, 99 S. Ct. at 2486-88).

**2.     Section 702 Does Not Create an Express Private Right of Action.**

Section 702, enacted on May 20, 2009, provides the following:

(a)   In General. – In the case of any foreclosure on a federally-related mortgage loan or on any dwelling or residential real property after the date of enactment of this title [May 20, 2009], any immediate successor in interest in such property pursuant to the foreclosure shall assume such interest subject to –

  (1)  the provision, by such successor in interest of a notice to vacate any bona fide tenant at least 90 days before the effective date of such notice; and

  (2)  the rights of any bona fide tenant, as of the date of such notice of foreclosure –

    (A)  under any bona fide lease entered into before the notice of foreclosure to occupy the premises until the end of the remaining term of the lease, except that a successor in interest may terminate a lease effective on the date of sale of the unit to a purchaser who will occupy the unit as a primary residence, subject to the receipt by the tenant of the 90 day notice under paragraph (1); or

    (B)  without a lease or with a lease terminable at will under state law, subject to the receipt by the tenant of the 90 day notice under subsection (1), except that nothing under this section shall affect the requirements for termination of any Federal- or State-subsidized tenancy or of any State or local law that provides longer time periods or other additional protections for tenants.

Pub. L. No. 111-22, § 702.

  Nothing in the express language of Section 702 contains a provision creating a right of action for violations of the section or establishes any remedy when the section is violated. *See Touche Ross & Co.*, 442 U.S. at 572, 99 S. Ct. at 2487 ("when Congress wished to provide a private damage remedy, it knew how to do so and did so expressly").  As there is no language expressly creating a right to bring suit to enforce the provisions of Section 702, it does not create an express private right of action. *See Logan*, 2010 WL 1444878, at *7 (Section 702 does not contain an express right of action).

  **3.**  **Section 702 Does Not Imply a Private Right of Action.**

  Where there is no expressly provided right of action in a statute, the Court must determine whether there is an implied private right of action by considering Congress' intent in enacting the statute. While the Supreme Court has not provided a particularized test for discerning legislative intent, there are several indicia that courts examine which consist of: (1) reviewing the "text and structure" of the statute to determine whether the statute contains "rights-creating" language that

5

focuses on the "individual protected" rather than "the person regulated,"[1] (2) examining the statutory structure, including the comprehensive remedial scheme in the statute and the explicit creation of a private right of action elsewhere in the same statute,[2] and (3) if the statutory text and structure have not conclusively resolved the issue, examining the statute's legislative history.[3] *Sandoval*, 532 U.S. at 288, 121 S. Ct. at 1520.

Where the statutory language focuses on the entity or individual regulated rather than the individual or class of individuals protected by the legislation, there is no implication of a legislative intent to confer a private right of action. *Sandoval*, 532 U.S. at 289, 121 S. Ct. at 1521. In considering Section 702, the court in *Logan* found that it does not focus on the individuals intended to be protected by the section but rather focuses on those who are regulated by it, i.e., the "immediate successors in interest" of federally regulated mortgages or residential properties that are foreclosed. *Logan,* 2010 WL 1444878, at *8.

Section 702 explains that successors in interest in certain foreclosed properties take that property subject to certain limitations and requirements. Pub. L. No. 111-22, § 702. First, Section 702 provides that successors in interest take the property subject to a required 90-day notice provision to vacate any bona fide tenant. *Id.* Second, Section 702 makes clear that the successors in interest assume an interest in the property subject to any rights of the bona fide tenant, with an exception for sale to a purchaser who will occupy the property as a primary resident. *Id.* Finally, Section 702 provides no grant of rights or remedies for tenants in the event that the successors in interest violate the provisions. The entire textual focus of Section 702 is to specify the limitations

---

[1] *See, e.g., Sandoval*, 532 U.S. at 288-89, 121 S. Ct. at 1520-21; *In re Digimarc Corp Derivative Litig.*, 549 F.3d at 1230-34.

[2] *See, e.g., Sandoval*, 532 U.S. at 290, 121 S. Ct. at 1521-22; *Transamerica Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11, 19, 100 S. Ct. 242, 247 (1979) ("[I]t is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it.").

[3] In examining aspects of legislative history, the Supreme Court has considered statements of intent in the congressional record (*see, e.g., Thompson,* 484 U.S. at 184-85, 108 S. Ct. at 518-19) and statements of intent in the congressional record associated with later amendments (*see, e.g., Daily Income Fund, Inc. v. Fox*, 464 U.S. 523, 538-40, 104 S. Ct. 831, 839-41 (1984)). The Court has also found a private right of action in a statute with similar language to that of a statute where it has previously found an implied private right of action. S*ee, e.g., Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 176-77, 125 S. Ct. 1497, 1505-06 (2005).

of the successors in interest's property rights in the types of foreclosed properties that fall under the ambit of Section 702.

This Court finds, as did the court in *Logan*, that the focus on the regulated party – the immediate successors in interest – rather than on the individuals protected by the provisions of Section 702 – does not tend to imply a private right of action for individuals potentially harmed.

In its examination of congressional intent, the Court also considers the statutory structure and the inclusion of a private right of action in other provisions of the statute. Section 702 is part of the Troubled Assets Relief Program ("TARP"), which was enacted as a subchapter of the Emergency Economic Stabilization Act ("EESA"). Congress' stated purpose in enacting EESA was to restore "liquidity and stability to the financial system of the United States." 12 U.S.C. § 5201(1). Meeting this purpose included preserving homeownership, protecting home values, college funds, retirement accounts, life savings, and providing public accountability for the exercise of that authority. *Id.* § 5201(2). Under TARP, the Secretary of the Treasury was provided the authority to carry out the purpose of preserving home ownership by allowing the Secretary to purchase or insure troubled assets and to modify loans that are owned or controlled by the federal government, among other authorized actions. *Id.* § 5201(2)(B), §§ 5211-5212. There is no specific statement of purpose provided in Section 702 expressing that it was intended to carry out something different than the general purposes of TARP and EESA –, i.e., providing the Secretary of the Treasury authority to stabilize the financial system.

Additionally, in creating TARP, Congress provided a private right of action for those directly and specifically harmed by the Secretary's actions in carrying out TARP's provisions. *Id.* § 5229(a); *see Pantoja v. Countrywide Home Loans, Inc.*, 640 F. Supp. 2d 1177, 1185 (N.D. Cal. 2009); *see also Logan*, 2010 WL 1444878, at \*9. This provides those affected by the Secretary's actions under TARP the ability to bring a case in court against the Secretary, but nowhere is there a private right of action provided to those who are harmed by individuals or non-governmental entities who violate TARP's provisions. *Pantoja*, 640 F. Supp. 2d at 1185 (finding Congress intended to limit private action under TARP solely to actions against the Secretary as provided in Section 5229).

As in *Logan*, this Court finds that Congress' express provision for a private right of action in Section 5229 against the Secretary of the Treasury weighs against the probability that Congress intended to include a private right of action under Section 702, but simply forgot to specify this explicitly. *See Touche Ross & Co.*, 442 U.S. at 572, 99 S. Ct. at 2487 (declining to infer private remedy when provision silent on the matter was flanked by provisions explicitly providing for a private cause of action). The existence of an express private right of action against the Secretary of the Treasury under TARP Section 5229 implies that Congress intended *not* to provide a private right of action under TARP Section 702, which does not expressly provide a private right of action.

The Court concludes that there is no evidence in the text and structure of the statute that Congress intended to provide a private right of action under Section 702. Therefore, an analysis of the legislative history is unnecessary. *Sandoval*, 532 U.S. at 288, 121 S. Ct. at 1520 ("We therefore begin (and find that we can end) our search for Congress's intent with the text and structure of Title VI."); *see also Love v. Delta Air Lines*, 310 F.3d 1347, 1353 (11th Cir. 2002) ("[I]f-and only if- statutory text and structure have not conclusively resolved whether a private right of action should be implied, we turn to the legislative history and context within which a statute was passed." (citing *Sandoval*, 532 U.S. at 288, 121 S. Ct. at 1520)).

In summary, the text of Section 702 does not imply a private right of action for those who are harmed by violations of its provisions. The language does not focus on the individuals protected; rather, it focuses on the limitations of property rights of successors in interest on certain foreclosed properties. Further, the inclusion of an express private right of action against the Secretary of the Treasury in another section of TARP evidences that Congress "knew how to create a private right of action to enforce a particular section of the Act when it wished to do so," but chose not to do so with respect to Section 702. *Northstar Fin. Advisors, Inc. v. Schwab Invs.*, 615 F.3d 1106, 1117 (9th Cir. 2010). The Court concludes that Congress did not intend to imply a private right of action for those harmed by violations of the provisions of Section 702.

For all of the reasons stated above, the Court finds that Section 702 does not create either an express or implied private right of action for individuals who seek a remedy for harm caused by a violation of the section. Thus, Plaintiff's claim for damages under Section 702 should be dismissed.

**C.     Plaintiff's Claim for Injunctive Relief Should Be Dismissed.**

Plaintiff asserts a right to injunctive relief under Section 702 as follows:

> Injunctive relief against Defendant is proper because Plaintiff would otherwise attempt to circumvent the Federal law by filing another action in the State Court, in defiance of the Federal Law. There is no plain, speedy, and adequate remedy at law, where the State Court refuses to apply the Federal Law.

Complaint at 2 (Doc. 1).  To the extent that Plaintiff is attempting to enjoin the state court from hearing the unlawful detainer action filed by Defendant due to Defendant's alleged violation of Section 702, this claim for relief should also be dismissed.

As analyzed above, there is no private right of action to seek relief for a violation of Section 702.  Moreover, as discussed below, even if a private right of action existed under Section 702, Plaintiff's request for injunctive relief would be subject to dismissal.

The Supreme Court has held that federal courts must abstain from granting injunctive or declaratory relief that would interfere with state judicial proceedings. *Younger v. Harris*, 401 U.S. 37, 40-41, 91 S. Ct. 746, 748-49 (1971).  The Ninth Circuit has explained that federal courts must abstain from hearing an action under *Younger* if four requirements are met:

> (1) a state-initiated proceeding is ongoing; (2) the proceeding implicates important state interests; (3) the federal plaintiff is not barred from litigating federal constitutional issues in the state proceeding; and (4) the federal court action would enjoin the proceedings or have the practical effect of doing so, i.e., would interfere with the state proceeding in a way that *Younger* disapproves.

*San Jose Silicon Valley Chamber of Commerce Political Action Comm. v. City of San Jose*, 546 F.3d 1087, 1092 (9th Cir. 2008).  Abstention pursuant to *Younger* applies to state criminal and civil cases as well as state administrative proceedings. *Aiona v. Judiciary of Hawaii*, 17 F.3d 1244, 1248 (9th Cir. 1994).  Here, all the requirements of *Younger* are met, thereby necessitating abstention.

First, although a judgment was apparently[4] entered on July 15, 2010, in the state proceeding, *Younger* applies so long as the state case was pending at the time the federal action was filed. *See Kitchens v. Bowen*, 825 F.2d 1337, 1341 (9th Cir. 1987).  This federal action was filed on June 22, 2010.  The state court action was pending at the time Plaintiff filed this federal suit.

---

[4]Stanislaus County Superior Court docket information reflects that judgment in that matter was entered on July 15, 2010.  *See* http://caseindex.stanct.org:8080/CaseIndex/faces/index.jsp.

9

1    Second, the state court proceedings implicate an important state interest – real property rights
2    and obligations. *See Fry v. Wachovia Mortg. FSB*, No. 09cv2662 L (NLS), 2010 WL 1279062, at
3    *2 (S.D. Cal. Mar. 26, 2010).
4    Third, Plaintiff is able to raise the notice requirement of Section 702 as an affirmative
5    defense to the unlawful detainer action. Thus, Plaintiff has adequate opportunity to litigate his
6    federal claims in the state court proceeding.
7    Finally, Plaintiff is essentially requesting that the Court enjoin the entire unlawful detainer
8    proceeding. This is precisely the type of intrusive action into state court proceedings that *Younger*
9    prohibits. *Gilbertson v. Albright*, 381 F.3d 965, 977 (9th Cir. 2004) (en banc).
10   Thus, because there is no private right of action for Plaintiff to bring his claims under Section
11   702 and *Younger* prohibits the Court from granting the relief Plaintiff seeks, Plaintiff's claim for
12   injunctive relief should be dismissed.

**D.    The Court Lacks Subject Matter Jurisdiction.**

14   The relief Plaintiff seeks cannot be granted under Section 702. As there is no private right
15   of action under section 702 and claims cannot "arise under" that provision, there is no federal
16   question to provide the foundation for subject matter jurisdiction in this Court. *See* 28 U.S.C. §
17   1331; *Franchise Tax Bd.*, 463 U.S. at 9-10, 103 S. Ct. at 2846. Further, because there is no private
18   right of action under Section 702, any amendment of Plaintiff's complaint under Section 702 is futile.
19   Therefore, leave to amend these claims should not be granted. *Bonin v. Calderon*, 59 F.3d 815, 845
20   (9th Cir. 1995) ("Futility of amendment can, by itself, justify the denial of a motion for leave to
21   amend.").

**IV.    RECOMMENDATION**

23   The Court HEREBY RECOMMENDS that Plaintiff's Complaint be DISMISSED without
24   leave to amend.
25   These findings and recommendations are submitted to the district judge assigned to this
26   action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within thirty (30) days
27   of service of this recommendation, any party may file written objections to these findings and
28   recommendations with the Court and serve a copy on all parties. Such a document should be

captioned "Objections to Magistrate Judge's Findings and Recommendations."  The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:  October 18, 2010**              /s/ Sheila K. Oberto
                                          UNITED STATES MAGISTRATE JUDGE